File case is set forth in the opinion of the Court, delivered by
Ford, J.
This ejectment depends on the construction of the will of George Somers, made the 17th of May 1785, very soon after which, he died. So much of it as has a bearing on this dispute is in the following words.
“ I will unto my son John Somers and to his heirs by his ¡ire-sent wife Anne, all the farm and plantation in Oxford, containing about four hundred and fourteen acres more or less, reserving -the full use and benefit of the above lands, unto my dearly belcved wife during her yyidowhood, for her support and decent maintenance, and my desire is that she may live with my son John, nevertheless, my said wife Barbara may remove elsewhere at her free choice. And also I will unto my bejoved wife Barbara all my personal estate of every denomination whatsoever, during the time she remains my widow; and at her death, the lands to cede to my said son John, his heirs and assigns, to all intents and purposes.”
It is agreed between the parties, that if John Somers the son and devisee, took by this devise, only an estate in fee tail, that at his death in 1821, it descended to the lessor of the plaintiff John H. Somers, who is the heir of John Somers and his wife Anne, and that judgment shall be rendered for him ; but if John Somers the devisee took an estate by the devise, in fee simple, then the defendant Joseph Pierson has the legal title, and that judgment shall be rendered for him. Whether the devisee took by this devise, a fee simple in the land, or only a fee tail, has been argued by both parties on paper, with very great learning and ability. *182 The result in my mind is that he took only an estate tail; and that this can be demonstrated from the words ©f the will; from the manifest intent of the testator, and the concurrence of all adjudicated cases; and that to support a different construction on this will, the meaning of its parts must be rendered inconsistent; and the language must be greatly garbled.
The words of the will are these; “ unto my son John Somers, and to Ms heirs by his present wife Anne.” A fee simple is an estate to a man and his heirs generally, comprehending those of all branches, classes and kinds; whereas a fee tail is an estate restricted to heirs of only one definite class, from which it can never depart; for if such class runs out or happens to become extinct, rather than pass into any kind different from that designated, the estate shall revert or return back to the heirs of the donor or giver. Now the words in question designate a definite kind of heirs, denominated heirs by Ms present wife Anne; to whom, in exclusion of every other kind, the estate is set apart and restricted, thus giving a direct and conclusive demonstration of t'he heirs to whom the estate should descend, and if the will had stopped here, both parties admit that it w'ould clearly be an estate in fee tail. We shall presently see whether in any subsequent part of the will, these plain words are irreconcilably contradicted. But let us pause on these clear words of the testator, for a moment, and enquire whether he could have intended differently from their import; for the intent of a testator is his real will, and wherever it is very plain and manifest, it will sometimes be enforced at law, even at the expense of the words themselves. But in this case the intent is just as plain as the words themselves. He shews as manifest a regard for his son’s wife Anne, as he does for his own son, and it is the joint-issue of these favored persons to whom he limits the estate; for he excludes the issue of even his own son by any other wife than Anne; and excludes the issue of Anne herself by any other husband. It is not in the power of language to express á particular interest more clearly than it is done by these words.
But though they do devise the land, the ensuing clause reserves the possession of it to the widow, during her widowhood. The will says, “ Resermng the full use and benefit of the above lands unto my dearly beloved wife during her widowhood,, for her *183 support and decent maintenance; and my desire is that she may live with my son John-; nevertheless my said wife Barbara, may remove elsewhere, at her free choice.” A reservation in a devise, is just as allowable as it is in a deed; and a reservation of the use of land, draws to it the legal possession of the land, just as fully as if it were given in direct words. Here then is a devise of the possession of the land, to continue hers during the time of her widowhood, without the smallest dependence upon her son for it; she shall have the rents and profits of it for her maintenance; she is not bound to reside on it; she may rent it out, and move away to live with her son if she choose, and has express liberty to remove wherever she pleases. An estate for life or widowhood could not have been more expressly given to her herself. Yet the defendant’s counsel undertakes to construe the devise to John'an cl his heirs, by his wife Anne, into nothing more than a trust estate for the benefit of the testators’ widow, in which, John and his heirs were intended not to take the least benefit for themselves, but merely a naked trust for the sole benefit of the widow; and that his heirs were mentioned merely for precaution, that if he should die in the life-time of the widow, they should be the trustees in his place, to preserve the estate for her use during the remainder of her life. Now this construction renders the devise to John and his special heirs, inoperative and void to all intents and purposes. The laud so expressly reserved to the widow herself, gives her a direct independent estate, that has no connexion with a dependence on John or his special heirs, any more than if they were not mentioned in the will; and if the devise is not allowed to convey the estate, after her death, to John and his special heirs, it can have no kind of operation; but the rule of law is an imperious one, that every clause in a will, shall be made to operate if possible; and this clause has no office to perform to any body, if not to John. So that the only alternative is to pass it over as inoperative, or else allow it to convey an estate to him. As a trust for the widow, it could serve only to hazard and weaken her estate, for if John and his children should happen to die before her, her estate at law must be lost for want of trustees to continue the trust. There is nothing on which to found any trust, beside mere conjecture, for the will does not contain a single word or phrase, that expresses or can imply it. But what is most con- *184 elusive against any trust, is the fact, that the land is not given to John or his heirs during the life of the widow, on the contrary it is expressly reserved and kept back from him; he takes no estate during the life of the widow, not for the moment intimated by counsel; instead of the life estate to the widow passing, as intimated, through' him, it is stopped by a reservation; and a trustee of land who has no title, legal or equitable, is a solecism. It is needless to spend further time in opposition to this uncorroborated and incoherent construction.
i pass on then to a subsequent clause, the only one remaining in the will in which an intent is pretended to be found contrary to the foregoing devise to John and his special heirs. It is the ibliowing clause wherein the testator speaking of his widow says, “and at her death, the lands to cede to my said son John, his heirs and assigns, to all intents and purposes.” To cede is no technical word, and therefore is to be taken as the testator is most likely to have understood it, so far as it may be inferred from the subject matler, and in connexion with what precedes and follows it. To cede is to yield up; and it is so evidently used in the passive form of this other verb, that without resorting to any argumentation on matter so obvious, I shall understand the clause thus; “ and at her death the lands to be yielded, up to my said son John, his heirs and assigns, to all intents and purposes.” The intents and purposes in the testators’ mind, are either to be conjectured, which is at best a dangerous mode of ascertaining them, or they must be the intents and purposes he had before expressed, concerning John and his heirs, which latter is evidently the best mode, because it banishes conjecture, and allows the testator to explain his own meaning. If it is to be yielded up to John and his heirs, to the intents and purposes before mentioned in the will, those intents and purposes were expressly avowed to be for John and his heirs, by his present wife, Anne, and the introduction of these unusual words “ to all intents and purposes,” as they can have no even probable reference except to what the testator had himself before expressed concerning John and his heirs, they serve to corroborate and strengthen the preceding limitation to his special heirs.
But it is argued that in this latter clause the testator saw fit to alter his first phraseology, so as no longer to stand “ heirs by his *185 present wife Anne” but “heirs and assigns;” discarding the former restriction, and employing the word “ heirs ” in its most general and comprehensive signification, in -which sense they convey an absolute fee-simple; and notwithstanding what went before, a man has a right to change his mind, and then his last words are his last will, and shall prevail. Now this rule is not to be denied, that if one part contradict another in a will, so that they cannot possibly be reconciled together, the former must necessarily give way, so as to let the latter prevail, as being the last mind or last will of the testator. But this is always a painful resort, never made but from imperious necessity, after every exertion of mind has failed to reconcile the meaning of the two parts, and render them harmonious. The first great leading rule, from which courts of justice never depart, is to put such a construction on apparently conflicting parts, that both of them, if possible, may stand, and the whole will be carried into effect. Now in the present case, nothing is easier than such a construction. The very case is so far from being a new one, that instances like it abound in the books, all adjudicated in the same way. 'lhus if land in the first part of a will, be devised to A. and his heirs, and the testator in the latter part provide where it shall go, in case A. should die without heirs of his body, these latter-words are held to shew what kind of heirs he intended by that word in the former part, otherwise the court would make the testator contradict himself, in different parts of the same will; which they will never do when it is possible to be avoided. Here the testator first devises the land to John and his heirs, giving a very particular description of the kind of heirs he intends them to be, namely, heirs by his present wife Anne. In the latter part of the will he comes over this same devise again, saying that after the death of his widow, the land shall then be yielded up to John and his heirs: but having fully expressed before, what kind of heirs they should be, it was unnecessary to go over that specification again, which had been so clearly stated that it could not possibly be' misunderstood; and therefore he contents himself here, to use the word heirs, without a useless repetition of what he had before so plainly declared on that point. If by heirs of John, in this passage, we understand the same heirs that he had so particularly described in the former passage, it is evident that *186 neither clause will require to be set aside; the construction makes the parts harmonize altogether, so that the whole will can be carried into effect. And this gives the land to John, and his heirs by his present wife Anne, according to the very words, and the plain and manifest intent of the testator.
. That these words create only an estate tail, is too clear for argument, therefore I shall only refer to the cases cited on this point. Coke Lit. 9 b; 26 b; 6 Cruise Dig. 268; 2 Bl. Com. 381. Shep. Touch. 442; Doe v. Fyldes, Cowp. Rep. 834. I am therefore of opinion that judgment be enteréd for the plaintiff, as on a verdict in his favor.
Hornblower, C. J. concurred.
Ryerson, J. gave no opinion, having been of counsel, in the cause

Judgment for the plaintiff.